**The STATE of Texas, Appellant,**

v.

**Vito C. POE, Appellee.**

**No. 07–95–0147–CR.**

Court of Appeals of Texas,
Amarillo.

May 31, 1995.

Potter County Dist. Atty., Rebecca King, Acting Dist. Atty., Amarillo, for appellant.

Law Office of William R. McKinney (William R. McKinney), Amarillo, for appellee.

Before REYNOLDS, C.J., and DODSON and QUINN, JJ.

QUINN, Justice.

The order of which review is sought emanated from an application by Vito C. Poe for habeas corpus. In granting Poe's application, the trial court ordered his release and dismissed, with prejudice, the indictment pending against him. The issues ripe for consideration are whether the State timely perfected its appeal and, if so, whether the appeal is nevertheless moot. Answering both affirmatively, the court must itself order dismissal.

## FACTS

On October 27, 1994, the State of Texas indicted Poe, a state correctional officer at the William P. Clements, Jr. Unit, for bribery. The case received cause number 34,-387–A. The charge arose from his alleged agreement to supply an inmate with a quantity of marijuana. Before the foregoing action came to trial, the court, on January 4, 1995, signed a judgment, in a separate proceeding numbered 80,317–C, forfeiting Poe's 1986 Lincoln Towncar. The basis for forfeiture, according to the record, arose from the use of the vehicle to commit the crime alleged in cause number 34,387–A.

No one appealed the forfeiture judgment. Nevertheless, Poe applied for a writ of habeas corpus once the decree became final. He contended that the forfeiture proceeding amounted to punishment "for the purposes of the Fifth Amendment Double Jeopardy Clause." Thus, the United States Constitution allegedly barred the State from prosecuting him for bribery.

The trial court agreed with Poe. On April 18, 1995, it signed an "Order Granting Writ of Habeas Corpus," directed the sheriff of Potter County to release the accused, and dismissed the indictment in 34,387–A "with prejudice." The order was then delivered to and filed-marked by the court clerk. Whether she distributed same to the parties is

unknown because the court immediately directed her to "not ... file same" due to "concern[s] about the propriety of ... [the] dismissal." Several days later the court again delivered the order to the clerk. In addition to its original language, date, and signature, the ruling contained the following hand-written passage as well:

> After signature the Court, being concerned about the propriety of such order of dismissal, directed the Clerk *not to file* the same. Now on this 5th day of May, 1995, the State having moved for dismissal, this order is also ordered to be *filed of record.*

(emphasis supplied). Below this paragraph appeared "Signed May 5, 1995" along with a second signature of the court. The face of the item further reveals a clerk's file-mark dated April 19, 1995, with an "X" through it.

As mentioned in the order, the State moved to dismiss the indictment, which motion the court granted on May 5, 1995. Also occurring on the latter date was the State's attempt to appeal by filing the first of two notices of appeal, the second being filed on May 15, 1995.[1]

## TIMELY PERFECTION

Article 44.01 of the Texas Criminal Code authorizes the State to appeal certain orders entered in criminal proceedings. *Tex. Code Crim.Proc.Ann.* art. 44.01(a) (Vernon 1995). Included within its umbrella are orders sustaining claims of former jeopardy. *Id.* at art. 44.01(a)(4). To perfect review of such matters, however, a notice must be filed "not ... later than the 15th day after the date on which the order, ruling, or sentence to be appealed is entered by the court." *Id.* at art. 44.01(d); *State ex rel Sutton v. Bage,* 822 S.W.2d 55, 56–57 (Tex.Crim.App.1992); *State v. Rosenbaum,* 818 S.W.2d 398, 400 (Tex.Crim.App.1991). Consequently, determining when the ruling is "entered by the

---

1. The second notice, like the first, cited the court's order "sustain[ing] a claim of double jeopardy" as the nucleus of its appeal. However, the "Acting District Attorney" for Potter County, as opposed to the Assistant Prosecutor for the Special Prison Prosecution Unit, executed the May 15th document. *See Tex.Crim.Proc.Ann.* art. 44.01(i) (Vernon Supp.1995) (defining the party

authorized to perfect appeal on behalf of the State as the county attorney, district attorney, or criminal district attorney primarily responsible for prosecuting cases in the court hearing the case and *excluding assistant prosecuting attorneys* ). The May 5th notice reveals that it was signed by an "Assistant Prosecutor."

court" becomes all important for once fifteen days lapse, the appellate window closes.

The State cites May 5th as the pertinent date, that being the day on which the "only valid appealable order granting the writ ... had been entered." Because the May 15th notice was filed within 15 days thereof, it concludes that it acted timely. This court agrees but not for the reasons cited.

■ First, the phrase "entered by the court" has been construed to mean "signed by the court." *State ex rel Sutton v. Bage*, 822 S.W.2d at 57; *State v. Rosenbaum*, 818 S.W.2d at 402. Second, the face of the order at issue discloses an original signature date of April 18, 1995. Third, the fifteenth day after April 18th fell on May 3rd. Since notice of appeal had yet to be filed by that date, jurisdiction over the appeal should have been non-existent.

■ Nevertheless, circumstances particular to this case remove it from the strict application of *Sutton* and into the tenuous world of *Rosenbaum*. As previously stated, the trial court directed the court clerk to withhold the order from filing because of concerns over the propriety of dismissal. Upon having its hesitancies placated by the State's motion to dismiss, it then informed the clerk to perform the ministerial act of filing the order. These events are virtually identical to those in *Rosenbaum* wherein the court " '[s]igned and entered [on] June 28, 1990' " its order quashing a portion of the indictment. *State v. Rosenbaum*, 818 S.W.2d at 402–403. Like the situation here, the *Rosenbaum* trial court was also wary about releasing the ruling prematurely. So, it in-

cluded in the decree a statement telling the court clerk that the order "is to be entered of record ... on Monday, July 2, 1990 and will become final 15 days thereafter. *Art. 44.01(d).*" *Id.* at 403 (emphasis in original). By incorporating this into the written decision, the reviewing court concluded that the judge actually "authenticated" and "post dated" the decision as of July 2, 1990, an act within its "(admittedly slippery) concept of inherent power." Thus, the State's time to appeal commenced not on the date the order was actually signed but on the date it was "entered of record," that is, released for public view. *Id.* at 403.

■ As logically "interesting" as the ultimate conclusion of *Rosenbaum* may be, this court is bound to follow precedent.[2] Though the ruling here lacked the "buzzwords" found there, their substance was the same. Both courts signed and delivered orders to the clerk. Both directed the clerk to forego filing same to a later date. Both induced the State to act in relation to the date the order was publicly disclosed as opposed to the date of signature. Both decisions must be treated alike. Thus, by its actions, the trial court here "postdated" and "authenticated" its signature as of May 5, 1995. Having noticed its appeal within 15 days from that date, the State acted timely. Indeed, any other result would be tantamount to allowing a trial court to implicitly and lawfully deny the State its statutory right to appeal specific criminal matter by signing yet withholding the order until the appellate period lapsed. *See State ex rel Sutton v. Bage*, 822 S.W.2d at 58

**2.** The situation harkens to the witticism of "where ever you go, there you are." D. Richards. The State apparently argued that "entered of record" meant just that, entry into the records of the court. Indeed, this posture had persuasive authority. *See Wilson v. State*, 677 S.W.2d 518, 522 (Tex.Crim.App.1984). Yet, the *Rosenbaum* opinion found it too nebulous. In spite of the legislature expressly conditioning the time of appeal from the order's "entry of record," "the date of actual entry into the court's records should be irrelevant vis-a-vis appeals by the State ... Entry into the records of the court *is merely ministerial* in nature." *State v. Rosenbaum*, 818 S.W.2d 398, 401 (Tex.Crim.App.1991) (emphasis added). "As a practical matter, a judge may never really know when a signed order, judg-

ment, or ruling is physically entered into the record." So to clarify the unambiguous words of the legislature, the *Rosenbaum* opinion contorted the definition of a term or art, that is "entry of record," to mean "signing by the judge." Then, it refused to apply the term in a manner consistent with the new found definition. Instead it used the trial court's attempt to delay disclosure by the clerk, an admittedly ministerial duty, to supersede the substantive judicial act of effectuating its written orders through signing and dating same. In sum, it rejected the State's argument that article 44.01(d) should comport with its plain meaning and then created an exception to the definition contrived, which exception harkens to the position taken by the State. "Where ever you go, there you are."

(dissent). A court's inherent power should not extend so far.

## RENDERED MOOT

Having found that appeal was timely, the court nevertheless concludes that it is moot. By moving to dismiss the indictment, and succeeding, the State vitiated the injury of which Poe complained. There is no longer a second prosecution entailing the facts, transaction or occurrence underlying the first punishment. *See Ex parte Sutherland,* 451 S.W.2d 913 (Tex.Crim.App.1970) (dismissing as moot an appeal from the denial of habeas corpus because the State dismissed the underlying indictment).

Therefore, the appeal is dismissed for want of jurisdiction.